```
                                   UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF FLORIDA

                                   CASE NO. 06-22916-CIV-MARTINEZ
                                   MAGISTRATE JUDGE P. A. WHITE
```

ELROY A. PHILLIPS,              :

    Plaintiff,              :

v.                              :          REPORT OF
                                           MAGISTRATE JUDGE
UNITED STATES,                  :

    Defendant.              :
_____

## I. Introduction

   The plaintiff, Elroy A. Phillips, presently confined at the FCI-Manchester, Kentucky, originally filed a pro se civil action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq. [DE#'s 1 and 24 (Amended Complaint)]. The plaintiff is proceeding in forma pauperis. (DE# 4).

   This case has a long history, including a stay and the consideration of numerous amended complaints. The procedural history is detailed at length in the Report of Magistrate Judge issued on February 17, 2009. (DE# 82). The Honorable Jose E. Martinez issued an Order directing the plaintiff to file one, complete amended complaint. (DE# 85). As a result, Phillips filed a "Verified Amended Complaint" (DE# 88).

   Phillips provided the following factual background in the Verified Amended Complaint. (DE# 88, p. 3-5). On June 8, 2001, West Palm Beach Police Department ("WPBPD") officers arrested Phillips pursuant to a federal arrest warrant. The officers confiscated and turned over to Drug Enforcement Administration ("DEA") Agent Brian M. Smith $1,610 in cash, a cell phone, credit cards, a black leather wallet, an 18kt gold Concord wristwatch with diamond bezel, and an 18kt gold ring with a 1.8kt diamond (hereinafter "arrest property"). On the day of Smith's arrest, DEA agents executed a search warrant at a residence owned by Phillips and removed a large bin containing documents, letters, postcards,

and pictures; a black leather computer bag; and a brown leather notebook.  Some of the pictures and postcards were signed by Dr. Martin Luther King, Jr. ("MLK").  Smith took responsibility of the items removed from Phillips's house.  The authorities eventually returned the $1,610 in cash to Phillips.  (DE# 88, p. 3-5).

According to the operative complaint, Phillips acknowledged that he no longer had a viable claim against Smith under the FTCA in light of the Supreme Court's decision in <u>Ali v. Federal Bureau of Prisons</u>, 128 S.Ct. 831 (2008) (federal prisoner has no cause of action under the FTCA for the loss of property).  Therefore, Phillips sought to sue DEA Agent Smith pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).  He alleged that Smith violated his Fifth Amendment rights by willfully, intentionally, and maliciously depriving him of personal property without notice (count 1) and that Smith's depriving Phillips of his property constituted the tort of conversion under Florida law (count 2). The plaintiff sought compensatory and punitive damages and other relief.  (DE# 88).

In a 4/27/09 Report, upon consideration of the Verified Amended Complaint and review of the entire docket, including the prior determination that the plaintiff had stated a cognizable Fifth Amendment claim, the Undersigned recommended that the plaintiff's Verified Amended Complaint be deemed the Operative Complaint and proceed against defendant Smith, in his individual capacity.  (DE# 94). The District Court adopted this recommendation in a subsequent order.  (DE# 100).

Smith moved for summary judgment (DE# 103) and filed several exhibits in support thereof (DE# 104).  The Undersigned issued an order instructing the <u>pro se</u> plaintiff concerning a response to the motion for summary judgment.  (DE# 105).

Smith next moved for leave to file an amended motion for judgment on the pleadings, or in the alternative, motion for summary judgment, and attached a copy of the amended motion.  (DE# 109). Smith argued that he is entitled to qualified immunity with respect to the <u>Bivens</u> claim; Phillips failed to present sufficient facts to support the <u>Bivens</u> claim; the <u>Bivens</u> claim is barred by the statute of limitations; and Smith is immune from suit in connection with

Phillips's state law conversion claim. (DE# 109). Smith refiled various exhibits in support of his amended motion and incorporated the exhibits filed in support of his original motion. (DE# 110). A subsequent Report dismissed Smith's original motion for summary judgment as moot, granted Smith's motion for leave to amend, and instructed the pro se plaintiff of his right to respond to the amended summary judgment motion. (DE# 111).

Phillips filed an oppositional response to Smith's amended motion for summary judgment (DE# 119) and exhibits in support of the response (DE# 121). Smith filed a reply (DE# 126) and exhibits in support thereof (DE# 125).

## II. Background Facts

The parties agree that on June 8, 2001 WPBPD officers arrested Phillips pursuant to a federal arrest warrant. (DE# 104-2, ¶1-2; 110-1, p. 33). Also on June 8, 2001, the lead investigator on Phillips's case, Agent John Enockson, obtained a valid warrant to search Phillips's house. (DE# 104-2, ¶1-2; 121, p. 7). DEA agents Enockson, Smith, and Brad Uhl and WPBPD officer Brian Kapper executed the search and seized several items. (DE# 104-1, 104-2, 104-3, 104-4).

### Arrest Property

The parties agree that at the scene of Phillips's arrest, WPBPD officers confiscated a watch, a ring, a cell phone, a wallet, credit cards, keys, and $1610 in cash. (DE# 104-2, ¶2; 110-1, p. 50-53). Later that day, DEA Agent Smith went to the WPBPD jail facility and took possession of these items. (DE# 104-2, ¶2).

Phillips wrote a 10/12/01 letter to the DEA Property Division requesting the return of his watch, ring, and cell phone. (DE# 104-2, p. 24). He explained that he "was informed that this property would be released but I would have to speak to an agent Smith. I don't know what agent Smith, so I address this letter to the property division." (DE# 104-2, p. 24). In Smith's 9/8/09 declaration, he states that he never received this correspondence. (DE# 104-2, ¶14).

Phillips's defense counsel Glenn Kritzer sent him an 11/16/01 letter wherein he explained that Phillips had to complete an authorization form, which Kritzer attached, listing the person to whom the DEA was authorized to return Phillips's arrest property. (DE# 121-1, p.21).  That individual would then need to present the completed authorization form to Agent Smith, who would turn over the watch, ring, and cell phone.  (DE# 121-1, p. 21).  During Phillips's deposition, he admitted that he never completed the authorization form.  (DE# 110-1, p. 94).

The DEA retained the arrest property for Phillips's criminal trial, which took place December 2-20, 2002.  (DE# 125-1).  The government's exhibit list included the arrest property, however, the prosecutor did not attempt to introduce the items. (DE# 125-1).  Smith executed an affidavit on September 6, 2006 in United States v. Phillips, Case No. 01-8084-CR-LENARD wherein Smith stated he returned, a ring, a watch, a cell-phone, a wallet, and credit cards to Phillips's criminal defense attorney, Glenn Kritzer, during a discovery conference in January 2002. (DE# 90, p. 10-11). In the 9/8/09 declaration Smith executed in connection with the present proceedings, Smith stated that he brought the property to the discovery conference with the intent to return the items to Kritzer.  At the conference, Kritzer photographed the property but did not take possession of it.  (DE# 104-2, ¶13).  Smith further stated  that upon receiving a copy of all documents that the WPBPD could locate regarding the arrest property, Smith recalled that, in February 2002, he delivered the property to WPBPD Officer Kapper because Phillips's family members lived in West Palm Beach.  (DE# 104-2, ¶16). Smith attached to his declaration, a 2/14/02 WPBPD Information Report completed by Kapper.  (DE# 104-2, p. 26).  In the comments section, Kapper stated that Phillips's family had recently attempted to reclaim the property and that Smith "requested that the evidence be placed into WPBPD evidence so that local family members can take possession of the property." (DE# 104-2, p. 26).  Kapper executed a declaration, which Smith attached to his motion for summary judgment, wherein Kapper stated that Smith turned the arrest property over to him and that he then gave the property to the Property & Evidence Section of the WPBPD. (DE#

4

104-4, ¶9). Smith also attached a 2/15/02 WPBPD Property & Evidence Section Submission Form which lists the arrest property and states that the wallet, credit cards, and cell phone were destroyed. (DE# 104-2, p. 27-28). WPBPD officer Jeffrey Nathason executed a declaration in support of Smith's motion wherein he explained that he was supervisor of the Property & Evidence room from 2000-07. (DE# 104-6, ¶1). He stated that the ring and watch were eventually donated to a charity, Crime Prevention Incorporated, and the other items were destroyed. (DE# 104-6, ¶6).

According to affidavits executed by Phillips (DE# 121-2, p. 26-34) and his sister Yvelle (DE# 121, p. 67-72), mother Cynthia (DE# 121-1, p. 1-9), and brother Elrod (DE# 121, p. 73-78); no government officials contacted Phillips or his family to inform them that Smith had turned the arrest property over to the WPBPD in February of 2002. Smith does not assert that he informed Phillips and/or his family of Smith's decision to give Kapper the arrest property, but instead states that he returned the items to the WPBPD to make it more convenient for Phillips's family to get possession of the property. (DE# 104-2).

<u>Signed Pictures of and Postcards from MLK</u>

Phillips explained during his deposition that he knew a woman, Dora McDaniels, who was MLK's personal secretary during the civil rights movement. (DE# 110-1, p. 103). McDaniels gave Phillips two signed photographs of MLK and three postcards written by MLK to McDaniels. (DE# 110-1, p. 103). Phillips's sister Yvelle, who was living in the house at the time of the search, had a phone conversation with Phillips the day before the search during which Phillips asked her to put the signed photos of and postcards from MLK in a brown leather notebook. (DE# 121, p. 68). According to her affidavit, she zipped these items inside the notebook and placed it in the plastic bin located in the upstairs office. (DE# 121, p. 68). During the search, Yvelle observed Smith exit the house with the plastic storage bin and place it in his car. (DE# 121, p. 68).

According to declarations executed by Enockson (DE# 104-1), Smith (DE# 104-2), Uhl (DE# 104-3), and Kapper (DE# 104-4) (attached to

Smith's motion for summary judgment), during the search a plastic storage bin was found in an upstairs office and emptied. (DE# 104-1, ¶7; 104-2, ¶7; 104-3; 104-4, ¶5). Officers then used the bin to collect documents with potential evidentiary value. (DE# 104-1, ¶7; 104-2, ¶7; 104-3; 104-4, ¶5). All four officers stated that they never saw signed or unsigned pictures of or postcards from MLK. (DE# 104-1, ¶7; 104-2, ¶7, 9; 104-3; 104-4, ¶6). However, Smith concedes that the brown leather notebook was seized from the office. (DE# 104-2, ¶18). This is consistent with the certification of return completed by Enockson after the search. (DE# 104-2, p. 7). This document contains an inventory of property seized including a brown leather notebook, plastic storage bin, and miscellaneous documents. (DE# 104-2, p. 7). On the certificate, Smith's name is listed under the "inventory made in the presence of" section. (DE# 104-2, p. 7). Smith admits in his declaration that the plastic bin and brown leather notebook were seized but that after a thorough search of the Miami and WPB DEA offices, he cannot locate either item. (DE# 104-2, ¶19-20).

### Brown Leather Bag

Officers also seized a brown leather bag, which Enockson listed under the inventory of property seized in the certificate of return. (DE# 104-2, p. 7). According to the government's exhibit list, the prosecutor introduced the bag during Enockson's testimony. In his declaration, Smith explained that he returned the bag to Phillips's brother Elrod on 9/1/06. (DE# 104-2, ¶17). Smith attached a copy of Form DEA-12, which states that Smith returned a brown leather bag to Elrod on 9/1/06, Elrod signed the form, as did a witness. (DE# 104-2, p. 30). In his affidavit, Elrod concedes that Smith returned the leather bag. (DE# 121, p. 74).

In his response to the motion for summary judgment, Phillips claims that the leather bag returned to Elrod was a small shaving kit bag and that the leather bag about which he complains was a large computer bag. He attaches affidavits from family members who claimed that the government introduced two leather bags in evidence during Phillips's trial. (DE# 121-2, p. 26-34; 121, p. 67-78; 121-

1, p. 1-9). Phillips's sister Yvelle stated in her affidavit that she observed Smith exit the house with the large plastic bin which contained the leather shaving kit and the computer bag. (DE# 121, p. 67-72). Smith filed a supplemental declaration wherein he states that only one leather bag was confiscated from the house and subsequently introduced at trial. (DE# 125-2).

### III. Analysis

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, to come forward with

sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson, 477 U.S. 242).

### B.   Statute of Limitations

Smith argues that Phillips's claim is barred by the statute of limitations. "A Bivens action is governed by the same statute of limitations as would a § 1983 action in that court." Kelly v. Serna, 87 F.3d 1235, 1238 (11 Cir. 1996). In Wilson v. Garcia, 471 U.S. 261 (1985), the Supreme Court held that the length of the limitations period in actions pursuant to 42 U.S.C. §1983, and the closely related questions of tolling and applications, are to be governed by state law. The Court further held that these cases are best characterized as personal injury actions. Such claims in Florida are governed by Fla.Stat. §95.11(3)(a), actions founded on negligence, or Fla.Stat. §95.11(3)(o), actions for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or other intentional tort, except

8

as provided in other sections. Both of these sections establish four year periods of limitations.

Later, the Supreme Court decided <u>Owens v. Okure</u>, 488 U.S. 235 (1989), which held that when a State has multiple statutes of limitations for personal injury actions as does Florida, courts considering §1983 claims should borrow the State's general or residual personal injury statute of limitations. In Florida, this is Fla.Stat. §95.11(3)(p), four years for actions not specifically provided for. The Supreme Court has also held that a federal court applying a state statute of limitations to an inmate's federal civil rights action should also apply any state statute tolling the limitations period for prisoners. <u>Hardin v. Straub</u>, 490 U.S. 536 (l989). Florida has a general tolling statute, Fla.Stat. §95.051, but it does not toll limitations periods for prisoners.

Thus, the length of the limitations period, determined by state law, is four years. The uniform rule in computing time periods is that the first day of the period is excluded from the computation, and the last day is included. <u>McMillen v. Hamilton</u>, 48 So.2d 162 (Fla. 1950); Fla.R.Civ.P. 1.090(a).

"The general federal rule is that 'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" <u>Rozar v. Mullis</u> , 85 F.3d 556, 561-62 (11 Cir. 1996) 561-562 (quoting <u>Mullinax v. McElhenney</u>, 817 F.2d 711, 716 (11 Cir. 1987)). Analyzing this issue, "a court [must] first . . . identify the alleged injuries, and then . . . determine when [the] plaintiff[ ] could have sued for them." <u>Id.</u> at 562.

Phillips filed his original complaint on November 19, 2006. Smith argues that Phillips's cause of action accrued when his property was confiscated on the day of his arrest, June 8, 2001. Therefore, because he initiated these proceedings more than five years later, Phillips's claim is barred by the statute of limitations. Phillips counters that until September 6, 2006, he believed his property was still intact and in the custody of Agent Smith. Phillips explains that in the Rule 41(e) proceedings held in case 01-8084-CR-LENARD, wherein Smith filed his affidavit

9

stating he returned the arrest property to Phillips's attorney, Phillips moved for the return of all property seized by the DEA.[1] The government asserted in its 5/11/06 response to Phillips's motion that it was in the process of tracking down the property. In a subsequent order, dated 10/03/06, the Court explained that "[t]he government, supported by an affidavit of Special Agent Brian Smith, maintains that all property belonging to Defendant were previously returned to him or his agents or are otherwise no longer in the government's custody or control." (Case No. 01-8084, DE# 422).

In this case, Phillips's claim is not barred by the statute of limitations. He first learned of the facts which would support his cause of action when the government responded to his 7/1/05 motion for return of property. When the government first confiscated Phillips's property, Phillips had no way of knowing that the property would be lost, donated, and/or destroyed several years later.

## C. Qualified Immunity

Smith argues that he is entitled to qualified immunity. When engaging in an analysis at the summary judgment stage as to whether a defendant may be entitled to qualified immunity, the court must take the facts in the light most favorable to the party asserting the injury. Saucier v. Katz, 533 U.S. 194, 201 (2001); Robinson v. Arrugeta, 415 F.3d 1252, 1257 (11 Cir. 2005); Pace v. Capbianco, 283 F.3d 1275, 1285 (11 Cir. 2002). Qualified immunity, under appropriate circumstances, serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority, if their conduct does not violate clearly established statutory and constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11 Cir. 2002). See also Lee v. Ferraro, 284 F.3d 1188, 1195 (11 Cir. 2002); Flores

---

[1]Phillips specifically moved for the return of the watch, ring, brown leather notebook, leather bag, cell phone, wallet, credit cards, and miscellaneous documents in the plastic storage bin.

v. Satz, 137 F.3d 1275 (11 Cir. 1998); Foy v. Holston, 94 F.3d 1528 (11 Cir. 1996).

In this case, Smith has over come his initial burden that he was acting within the scope of his discretionary authority when he was handling Phillips's property. See McCullough v. Antolini, 559 F.3d 1201, 1205 (11 Cir. 2009).

Once the defendant has satisfied the initial burden, the plaintiff bears the burden of proving the existence of a clearly established right at the time of the alleged impermissible conduct. See Foy, 94 F.3d at 1532. This does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell v. Forsyth, 472 U.S. 511, 535, n. 12 (1985); "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 639 (1987). In order to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

Smith argues that Phillips's Fifth Amendment rights "were not clearly established under the applicable law," without citing any authority in support of this claim. However, Phillips's right to sue a DEA agent under Bivens for violating his constitutional rights was clearly established when Smith allegedly took actions which infringed upon Phillips's Fifth Amendment rights. See Albajon v. Gugliotta, 72 F. Supp. 2d 1362, 1371 (S.D. Fla. 1999) (holding that Bivens allows a plaintiff to seek money damages from a DEA agent who allegedly violated his constitutional rights.).

In light of the foregoing, Smith's motion for summary judgment should not be granted on the basis of qualified immunity.

**D. Merits of the Bivens Claim**

In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court implied a cause of action against federal agents who allegedly violated the United States Constitution. In this case, Phillips alleges that DEA Agent Smith violated his Fifth Amendment right to procedural

due process prior to depriving him of his personal property. Phillips concedes that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986).[2]

   Smith argues that the record contains no evidence to support a finding of intentional, willful, or malicious conduct on Smith's part. (DE# 109-2, p. 15).  With respect to the arrest property, Smith asserts that his returning the property to the WPBPD without expressly notifying Phillips constituted negligence at most.  Smith further asserts that Phillips has presented no evidence that Smith intentionally destroyed, or was even in possession of, the brown leather notebook, the leather computer bag, and/or pictures/postcards signed by MLK.

   Phillips disagrees that Smith's actions with regard to the arrest property only constituted negligence.  With respect to the leather notebook, computer bag, and MLK memorabilia, Phillips asserts that Phillips's sister observed Smith remove these items from Phillips's house.  Phillips further claims that Smith "stole" these items and is currently "lying" about their whereabouts.  (DE# 119, p. 8-9).

---

   [2]  If Smith was a Florida official, Phillips's claim would not be viable in light of Parratt v. Taylor, 451 U.S. 527, 544 (1981) (overruled in part not relevant here, by Daniels v. Williams, 474 U.S. 327, 330-31 (1986)) and Hudson v. Palmer, 468 U.S. 517 (1984).  In Parratt and Hudson, the United States Supreme Court held that a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise under 42 U.S.C. §1983 to a procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy.  The State of Florida has provided a tort claims procedure which may be utilized to recover damages for property losses.  Fla.Stat. §768.28 (1987).  This procedure is available to Florida prisoners.  West v. Wainwright, 380 So.2d 1338 (Fla. 1 DCA 1980).  Thus, unless the deprivation of property has occurred as the result of an established unlawful state procedure, the existence of the state remedy precludes the availability of *l983 relief for negligent or intentional deprivation of personal property. Hudson v. Palmer; Parratt v. Taylor.  The Undersigned noted in a 3/28/08 Report that in light of the Supreme Court's holding, in Ali v. Federal Bureau of Prisons, 128 S.Ct. 831 (2008), that a federal prisoner has no cause of action under the FTCA for the loss of property, "it now appears that the plaintiff no longer has an adequate post-deprivation remedy under the FTCA."  Instead, Phillips might have a Bivens claim based on the alleged loss of his property, so long as he can establish something more than mere negligence on the part of Agent Smith.(DE# 55, p. 4-5).

The facts regarding the arrest property, which are not in dispute, fall short of establishing that Smith intentionally violated Phillips's Fifth Amendment Rights. By returning the property to the WPBPD, Smith was attempting to make it easier for Phillips to regain possession of his property, not to ensure that the property was destroyed. There is also no evidence to support Phillips's claim that after returning the property to the WPBPD, because Phillips's family members lived in West Palm, Smith intentionally failed to notify Phillips where the property was located. Smith correctly asserts that the evidence establishes a negligent failure to notify Phillips at most.

Phillips also fails to present evidence of an intentional act on the part of Smith with respect to the items seized from Phillips's house. In his declaration (DE# 104-2), Smith swears that he never had possession of the brown leather notebook that was seized from Phillips's house and does not recall seeing the notebook at the Miami or WPB DEA offices; he never observed or had possession of any MLK memorabilia; he recalls seeing the plastic bin in a DEA temporary storage area in Miami; he has searched for the leather notebook (on several occasions) and the plastic bin at the Miami and WPB DEA offices without locating either. With respect to the leather bag, Smith states that the DEA seized only one leather bag, that he took custody of the bag and it was placed at the WPB DEA offices for safekeeping until the trial, it was introduced at trial, and it was returned to Phillips's brother. Lastly, Smith swears that he "did not sell or destroy any of the property that Mr. Phillips claims in this litigation" and never directed anyone else to destroy or sell any of the property. (DE# 104-2). Phillips has not satisfied his burden with evidence to refute Smith's sworn testimony regarding these items. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992) ("If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence."). Even assuming all the property about which Phillips complains was

seized, at most the record shows that it was negligently misplaced by the DEA. Phillips has not presented any evidence, aside from conclusory allegations, that Smith intentionally stole his property. See Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.").

### F.  State Conversion Claim

A tort claim is not a constitutional matter, but a state claim, which the Court would have the power to resolve as a pendent state issue only if the court already has jurisdiction over the parties. In other words, the parties must either be diverse or there must be a substantial federal claim asserted against the defendant. Williams v. Bennett, 689 F.2d 1370, 1379-80 (11 Cir. 1982), cert. denied, 464 U.S. 932 (1983). Pendent jurisdiction, however, is a doctrine of discretion, not of plaintiff's right, and generally, if all federal claims are eliminated before trial, the plaintiff's pendent state claims will be dismissed and he is required to return to the state forum to pursue them. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Brown v. Masonry Products, Inc., 874 F.2d 1476 (11 Cir. 1989), cert. denied, 493 U.S. 1087 (1990); Fiscus v. City of Roswell, 832 F. Supp. 1558, 1564-65 (N.D.Ga. 1993). In this case, having concluded that summary judgment in Smith's favor is appropriate on all federal claims, Phillips's pendent state claim must be dismissed.

### IV.  Conclusion

It is therefore recommended:

1. Smith's amended motion for summary judgment (DE# 109) be granted as to all claims.

2. Phillips's state law claim for conversion be dismissed without prejudice to pursue it in the state forum.

3. This case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 21st day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Elroy A. Phillips, Pro Se
      Reg No. 71660-004
      FCI-Manchester
      P.O. Box 4000
      Manchester, KY 40962-4000

      Wendy A. Jacobus, Esq.
      Assistant U.S. Attorney
      99 N.E. 4th Street, Third Floor
      Miami, FL 33132